WILLIAM H. KENNICOTT, Appellant, *v.* PHILLIP SHERWOOD, Appellee.

APPEAL FROM COOK.

In an action of covenant on a lease to recover damages for failure to surrender possession, where it appeared that the lessor, before the expiration of the lease sued on, had again leased to another party, who permitted a sub-tenant under the original lease, to hold over, with an understanding that possession should be held by such sub-tenant, it was held that a recovery could not be had, the defendant not being privy to the arrangement, between the second lessee and the sub-tenant.

THIS was an action of covenant upon a lease containing, among other things, a covenant on the part of the defendant to yield up the demised premises to the plaintiff, at the expiration of the term of the lease. The plaintiff, in his declaration, assigns a breach of this covenant, upon which the defendant takes issue. No questions arise on the pleadings, but all the questions in the case arose on the trial, and on motion for a new trial, and are all presented by the bill of exceptions.

On the 29th day of December, A. D. 1857, before MANIERRE, Judge of the Circuit Court, and a jury, the several issues were tried.

The plaintiff introduced a lease, made the twenty-first day of March, in the year of our Lord one thousand eight hundred and fifty-five, between William H. Kennicott, plaintiff below, and Phillip Sherwood, which set out that in consideration of the covenants and agreements therein mentioned, to be kept and performed by the said Sherwood, his executors, administrators and assigns, Kennicott had demised and leased to the said appellee, all those premises situate, lying and being in the city of Chicago, in the county of Cook, and the State of Illinois, known and described as follows, to wit: The east third (1-3) of lot three (3), block ninety-five (95), in school section of the original town of Chicago, together with the buildings thereon situated;

*to have and to hold* the said above described premises, with the appurtenances, unto appellee, his executors, administrators and assigns, from the first day of May, in the year of our Lord one thousand eight hundred and fifty-five, for and during and until the first day of May, A. D. eighteen hundred and fifty-six. And the appellee, in consideration of the leasing of the premises aforesaid, by the appellant, did covenant and agree with the appellant to pay him, as rent for said demised premises, the sum of six hundred dollars, payable in advance, as follows: Fifty dollars on the first day of May, A. D. eighteen hundred and fifty-five, and fifty dollars on the first day of each month thereafter until the said sum of six hundred dollars be fully paid. And the said appellee further covenanted with the said appellant, that at the expiration of the time in this lease mentioned, he would yield up the said demised premises to the said appellant, in as good condition as when they were entered upon by the said appellee, loss by fire, or inevitable accident, or ordinary wear excepted.

It was further agreed, by the said appellee, that neither he nor his legal representatives would underlet said premises, or any part thereof, or assign the lease, without the written assent of appellant, first had and obtained thereto.

The appellee called as a witness *Charles S. Bogue*, who testified as follows, to wit:

I am acquainted with the plaintiff in this suit; I was a constable in Chicago in the year 1856, and at the request of the plaintiff I served notice on John Van Buskirk, requiring him to deliver up possession of certain premises then occupied by him, and situated on Madison street; I served the notice May 6th, 1856; Van Buskirk said he was not ready to deliver up possession; he remained there until he died, about 22nd October, 1856; I know nothing of the occupation of the premises after his death; I know that the plaintiff commenced proceedings against Van Buskirk for forcible entry and detainer; I was present at the trial; Sherwood, the defendant in this suit, was also present.

On being cross-examined, witness testified as follows, viz.: I presume the date of the notice now shown me is the day I served it; I served it on Van Buskirk at the house where he resided; he said he would not give up the possession; I don't recollect that he gave any reason.

The counsel for the plaintiff also gave in evidence the notice shown to the last witness, and of which the following is a copy, viz.:

Mr. John Van Buskirk:—

Take notice that I demand immediate possession of the premises described as follows, to wit: The east ($\frac{1}{3}$) one-third, of lot (3) three, block 95, school section

addition to Chicago, known as number 174, on Madison street, in the city of Chicago. Mr. Charles Bogue, the bearer of this, is authorized to receive possession for me.                          .            WM. H. KENNICOTT.

*Chicago, May 6th,* 1856.

The counsel for the plaintiff also introduced evidence showing that after the serving of such notice, on the 8th day of May, 1856, the plaintiff commenced proceedings against the said Van Buskirk, before Calvin De Wolf, justice of the peace of Cook county, under the statute of forcible entry and detainer, on the ground that the plaintiff had leased the premises to the said Sherwood for the term of one year, ending on the 1st day of May, 1856, and Sherwood had underlet to Van Buskirk. But Van Buskirk wrongfully refused to deliver up possession, although the year had expired, and possession had been demanded by notice in writing. That on the trial before the justice, the verdict of the jury was in favor of said plaintiff, and thereupon the justice gave judgment that the plaintiff should have restitution of the premises and his costs, from which judgment, the said Van Buskirk appealed to the Circuit Court of Cook county, but the said Van Buskirk died before the appeal was brought to a trial, and the court then dismissed the appeal for want of prosecution.

*Asa Kennicott,* a witness called by the plaintiff, being sworn, testified as follows, viz.: I am acquainted with the premises in question—I have resided in Chicago during the last fifteen years, and have some knowlege of what property would rent for. The rent of these premises was worth one thousand dollars, for a year from May 1st, 1856. Rents were high that season, I negotiated a lease of these premises that season for one year from May 1st, 1856, with the privilege of five years, at a rent of one thousand dollars a year. I don't know the name of the person with whom I negotiated—I think his name was Bodwell—this was in April, 1856.

On being cross-examined by the defendant's counsel, the witness said:

I had no house of my own at the time; I frequently talked with persons having buildings, and from knowledge so obtained, and from the fact that the price so required was so readily accepted, I form my opinion of the value. There were two other persons who wished to rent the premises at that price.

*A. E. Woolcot,* a witness called for the plaintiff, being sworn, said: I am an attorney at law; I came to Chicago on the 8th of January, 1857, and since the 11th of January, have been boarding with Mrs. Van Buskirk. During all that time she has occupied the premises in question. I negotiated a lease from the plaintiff to Mrs. Van Buskirk, the term to commence on the

first day of May, 1857, and she has held under that lease since that time.

*E. A. Bogue*, a witness called by the plaintiff, being sworn, said: Sometime in April, 1856, I went with the plaintiff to serve a notice on Van Buskirk to leave the premises, on the 1st day of May, 1856. He, Van Buskirk, was not at home, and the plaintiff. served the notice on Mrs. Van Buskirk.

*John Maynard*, a witness called by the defendant, testified as follows: I am acquainted with the premises in question—Van Buskirk occupied the premises in May and April, 1856. I had a lease to commence on the 1st day of May, 1856, but I gave it up. I demanded possession of Mrs. Van Buskirk—she said she would not give possession. Don't remember whether I had the lease with me at the time—I gave up the lease to the plaintiff after I made the demand, and on the same day, May 1st, 1856.

The counsel for the defendant, then requested the plaintiff to produce the lease mentioned by the witness Maynard, and the same being produced, was shown to the witness, who said, the instrument now shown me is the lease of which I have spoken. The counsel for the defendant then offered in evidence said lease, which is in the usual form.

*Sophia Van Buskirk*, a witness called by the defendant, testified as follows: I am the widow of John Van Buskirk. We occupied the premises in question up to the first day of May, 1856, under Mr. Sherwood—my husband was not in the city May 1st, 1856. In the fore part of April, Maynard told me he wanted me to remain in the house as long as I chose—saying that he had a lease—that he would give me permission to do so —that he had a lease in his pocket. We remained on account of this permission and request. We had supposed we were to have the premises of the plaintiff for another year; Mr. Sherwood made no demand of possession that I know of, but he came to me in regard to the matter the second or third day of May, and I told him I was remaining on the premises by the permission of Maynard, who had leased the premises for five years.

On being cross-examined, the witness testified: About the first day of April was the first I saw Maynard. He said he had a lease, and said that we could remain there—he said he should throw up his lease—said the house was not as good as had been represented—said he would give us permission to remain. Maynard called two or three days before the first day of May, and said he would demand possession on the first day of May, and instructed me to say that I would not give up possession— I remained for that reason.

Maynard being called by the plaintiff, testified as follows: Soon after I took the lease from the plaintiff, in the fore part of April, I called at Van Buskirk's, and we had the conversation Mrs. Van Buskirk has testified to. I told them that I would give them permission to remain in the house, and it was arranged that I should demand possession of them on the first day of May, that they should refuse to give up possession, and that then I should throw up my lease on the ground that I could not get possession. Afterwards, and a week or two previous to the first day of May, I went with Mr. Van Buskirk to a lawyer, to ascertain whether we could do as we had talked; he told us we could not do it. I then told Mr. Van Buskirk I would have nothing more to do with it. After that I gave no permission to remain. I had no authority to permit them to remain, and gave none.

At the request of the counsel for the plaintiff, the court instructed the jury as follows:

1. If the defendant or his assignee, Van Buskirk, held over the possession of the premises, and continued in possession during the year commencing May 1st, 1856, and refused to deliver possession to the plaintiff, then the plaintiff is entitled to recover the value of the use of the premises for that time.

2. If the jury find for the plaintiff, then he is entitled to recover all the damage sustained by a breach of the covenant in question, though a part may have accrued after the commencement of this suit.

And at the request of the counsel for the defendant, the court then and there gave the jury the following instructions in writing, viz.:

1. If the jury believe, from the evidence, that John Maynard received a lease of the premises in question from the plaintiff, to take effect on the first day of May, A. D. 1856; and that said Maynard instructed, requested or induced the tenant Van Buskirk to remain on said premises, after the expiration of the lease of said premises, by the defendant to her; and that she held over in consequence of such instructions, or authority, or permission, they will find for the defendant.

2. If the jury shall believe, from the evidence, that the defendant or his tenant, Van Buskirk, was ready and willing to deliver up possession of the premises at the expiration of the lease in question, but was prevented from so doing, and was authorized to continue in possession, or was prevented or requested to remain by Maynard, and that he was entitled to possession and claimed title under the plaintiff by a lease from him, then the jury will find for the defendant. To the giving of which instructions the counsel for the plaintiff excepted.

The jury rendered a verdict for the defendant, and the counsel for the plaintiff moved the court for a new trial, on the grounds:

1st.    That the verdict is against the evidence.

2nd.    That the instructions given by the court on the part of the defendant, were not warranted by the evidence, but tended to mislead the jury, and were erroneous.

Which motion was overruled.

GOODRICH, FARWELL & SMITH, for Appellant.

P. BASS, and J. MULVEY, for Appellee.

WALKER, J.    This was an action of covenant instituted by appellant against appellee to recover damages for a failure to restore and surrender the possession of premises, at the end of the term.    The appellant after leasing to appellee and before the lease had expired, executed a lease of the same premises to John Maynard for five years, to commence on the first day of May, 1856, and on the expiration of the first lease.    After Maynard had obtained his lease, and early in April, he went to Van Buskirk whom he found in possession, as the under-tenant of appellee, and gave him permission to remain in possession after his lease commenced, and for the purpose of getting rid of his lease, arranged with Van Buskirk that on a demand of possession which he would make, on the first day of May, 1856, possession should not be given, but Maynard swears that after consulting counsel and finding that such an arrangement would not enable him to compel appellant to cancel his lease, he informed Van Buskirk that he would have nothing more to do with the arrangement.    Mrs. Van Buskirk testifies that two or three days before the first of May, Maynard came and directed her when he should make a demand of possession on the first of May, to refuse to surrender it, and that when the demand was made at that time, in pursuance to those directions delivery of possession was refused, and that Van Buskirk continued to hold possession in pursuance of that direction.    Appellee on the second or third day of May called to see why Van Buskirk had not vacated the premises, when he was informed by the family that they were then in possession under Maynard, who had a lease from the appellant.    Under this evidence and the instructions of the court the jury found a verdict in favor of the appellee, and appellant entered a motion for a new trial which was overruled by the court and judgment rendered upon the verdict, from which he prosecutes this appeal.

That the arrangement made by Maynard with Van Buskirk was such as would have enabled him to recover rent, had he not

surrendered his lease there can be no question. His lease was to commence and did commence on the first day of May, and when the demand of possession was made, Maynard was entitled to the possession, and if it was retained by Van Buskirk at his request, and with the arrangement that he was to continue in the occupancy of the premises, it amounted to an attornment by Van Buskirk to Maynard the lessee, and the possession in fact by the arrangement of the parties became that of Maynard. He had such an interest in the premises as authorized him on the first day of May to receive the possession by an agent or under-tenant. The possession of Van Buskirk on the first day of May and afterwards, until the lease was cancelled, was the possession of Maynard. And there can be no doubt if the lease had not been canceled the appellant could have held Maynard liable for the payment of the rent and to a performance of all the covenants on his part contained in the lease, upon the proof of possession disclosed in this record.

Again the lease recites, and by it Maynard agrees that he has received the possession of the premises. And when it is remembered that the lease bears date on the fourth day of April, 1856, and the arrangement between Maynard and Van Buskirk, sworn to by Mrs. Van Buskirk, took place about the first of April, it is a circumstance which would seem strongly to indicate, that he had at the time of entering into the lease an arrangement with Van Buskirk for possession. That Maynard imposed upon appellant seems to be clear, but in the whole of this transaction appellee seems to have had no concern, as there is no portion of the evidence tending in the slightest degree to implicate him as taking any part in the arrangement. He was not in a position to recover possession at the expiration of the lease from himself to Van Buskirk, because upon the termination of that lease, Van Buskirk ceased to be his tenant by attorning to Maynard, and had he sued for the possession Van Buskirk could have successfully set up his lease from Maynard who had the undoubted right, to continue him in possession. And as the appellant had placed it in Maynard's power to continue Van Buskirk in possession by giving to him the lease, appellee should not be held responsible for Maynard's acts, and if loss shall be sustained by any one, it should be by appellant, who gave the power to Maynard to receive the possession. Again as Maynard became appellant's tenant by the execution of the lease, possession by himself or the under-lessees became appellant's possession. And when Maynard received the possession by the occupancy of Van Buskirk under him, appellee's covenant to restore possession was fully performed by the possession of appellant's tenant. So that in any point of view in

which we can look at the case, we are unable to perceive any grounds upon which to hold that appellee should be held liable for a breach of his covenant, unless the evidence in the case was untrue. And the credibility of the witnesses and the weight that shall be given to their testimony are questions to be determined by the jury. They in this case have decided it in favor of the appellee and with that finding we are not disposed to find fault, as the evidence so far as we can see, justifies their verdict.

The instructions given by the court both for plaintiff and defendant, present the law arising on the facts in evidence, as we believe, correctly. We are unable to perceive that they are calculated to mislead the jury or are in any other respect erroneous. We are therefore of the opinion, that the court below committed no error in giving them. The record presents no cause for reversing the judgment of the Circuit Court, and the same must therefore be affirmed.

*Judgment affirmed.*

BREESE, J. I do not concur in affirming this judgment for the reason that the Court did not, in giving the instructions to the jury, advert to the contrivance and fraud of the parties, to deprive appellant of his just claim.